[No. 375.   January 21, 1890.]

JOHN B. LAMY, JR., AND MERCEDES CHAVES DE LAMY, PLAINTIFFS IN ERROR, v. THOMAS B. CATRON AND WILLIAM T. THORNTON, DEFENDANTS IN ERROR.

DIVORCE—ALIMONY PENDENTE LITE—SEPARATE ESTATE OF WIFE—ATTORNEY'S FEES—JURISDICTION OF DISTRICT COURT.—Held: The district court, which is a court of equity as well as of common law, may, as an incident to the power to decree divorces, grant to the wife, upon a proper showing, pendente lite, temporary maintenance and allowance, and enforce payment of the same, against the husband, or his property, in the absence of a sufficient separate estate of the wife,

or under such circumstances, may charge such maintenance and allowance for attorney's fees against any common property of the husband and wife, whether such property be under the control of the husband or wife.

2. Where the wife has an ample separate estate of her own, she may charge such estate with necessary attorney's fees to enable her to prosecute or defend a divorce suit to which she is a party; and when she has done so, in the employment of her attorney, the court has the power, as an incident to the divorce proceeding, to decree such necessary fees against her separate estate as an allowance to her attorney, so far as such fees are actually necessary, and limited to the fair value of the services rendered; and a compromise of the suit between the husband and wife, to which her attorney was not a party, can not deprive him of the right to his fee.

ERROR, from a decree in favor of defendants, to the First Judicial District Court, Santa Fe county. Decree affirmed.

The facts are stated in the opinion of the court.

GILDERSLEEVE & PRESTON for plaintiffs in error.

In proceedings to review a judgment or decree, the court in which the proceedings are pending sits as a court to examine and review errors of law only. Story's Eq. Pl. [6 Ed.] secs. 403–407; 2 Dan. Ch. Pr., p. 1576, and notes; Brewer v. Bowman, 20 Am. Dec. 158, and note p. 164, with cases there cited; Barton's Eq., p. 163.

Questions of fact are not open to discussion on review. Evans v. Clement, 14 Ill. 206; Garrett v. Moss, 22 Ill. 363; Beard v. Butts, 95 U. S. 434, 436.

Facts set up in the answer, and not shown by the record, should be disregarded. Edmundson v. Marshall's Heirs, 6 J. J. Marshall (Ky.), 449; Barton's Eq. 165.

Evidence taken upon the former trial is no part of the record, and can not be considered in this proceeding for any purpose. Turner v. Berry, 8 Ill. (3 Gilm.) 541; Whiting et al. v. U. S. Bank, 13 Pet. 6, 14.

The only questions that can be considered are errors of law apparent upon the face of the proceedings.

The husband is not liable at common law to the legal adviser of the wife in prosecuting and defending a divorce suit. Morrison v. Hall, 42 N. H. 478. (80 Am. Dec. 120); Pay v. Adam, 50 Id. 82 (9 Am. Rep. 175); Williams v. Moore, 18 B. Mon. (Ky.) 514; Shelton v. Pendleton, 18 Conn. 417; Johnson v. Williams, 3 Iowa, 97; Coffin v. Durnham, 8 Cush. (Mass.) 404; 2 Bish. Marriage and Divorce, 391; note to Cunningham v. Irwine, 10 Am. Dec. 463.

The wife is not liable on her contract for counsel fees made during coverture even though she gains the suit. Wilson v. Brown, 25 Wend. 386; Viser v. Bertrand, 14 Ark. 267.

Under the civil law the community property is not liable for the wife's counsel fees in a divorce suit. Tucker v. Carlin, 14 La. Ann. 744.

Before counsel fees can be made a charge upon the wife's separate estate it must appear that the services rendered were for the benefit of the estate. 1 Bish. on Married Women, 875; Yale v. Dederer, 22 N. Y. 451; Viser v. Bertrand, 14 Ark. 267; Cook v. Walton, 38 Ind. 228; Putnam v. Tennyson, 50 Ind. 456; Pierce v. Osman, 79 Id. 259.

After the parties have settled their differences and returned to the connubial state it is too late to apply for counsel fees. McCulloch v. Murphy, 45 Ill. 255; Kirby v. Kirby, 1 Paige (N. Y.), 565.

Liens are given to attorneys only upon papers in their hands, or on funds or property secured or recovered by their services. Weeks on Attorneys at Law, 605–619.

Parties to suits may make bona fide settlements, and defeat the liens of attorneys. Weeks on Attorneys at Law, 629; Platt v. Jerome, 19 How. 384.

CATRON, THORNTON & CLANCY for defendants in error.

An allowance for fees may be made directly to solicitors themselves without any further application by their immediate client. Central R'y Co. v. Peters, 113 U. S. 124; Wright v. Wright, 1 Edw. Ch. 62, 63; North v. North, 1 Barb. Ch. 246; Gillis v. Holly, 19 Ala. 664.

For services to a married woman it is proper to charge her separate estate. Yale v. Dederer, 18 N. Y. 281; Id., 22 N. Y. 459; Owen v. Cawley, 36 N. Y. 603, 605; Maxon v. Scott, 55 N. Y. 250, 251.

The husband is liable for attorney's fees and compelled to advance them. Shepherd v. MacKoul, 3 Camp. 326; Belcher v. Belcher, 6 Eng. Ec. 372; D'Aguilar v. D'Aguilar, 3 Eng. Ec. 338; Collins v. Collins, 2 Paige, 10; Dumond v. Magee, 4 Johns Ch. 310.

Attorneys will be paid up to final decree, even when woman defendant fails. Standford v. Standford, 1 Edw. Ch. 317; Daily v. Daily, Wright, 518; Weaver v. Weaver, 33 Ga. 172.

When the bill was dismissed an order allowing temporary alimony to end of suit, and expenses, was made. Bishop v. Bishop, 17 Mich. 218; Cooper v. Cooper, 18 Id. 205.

Allowed where there was a decree against plaintiff and an appeal. Goldsmith v. Goldsmith, 6 Mich. 286.

Allowance of alimony and counsel fee is incidental to the right to decree a divorce. Ricketts v. Ricketts, 4 Gill. (Md.) 109, 110; Denton v. Denton, 1 John Ch. 364; Mix v. Mix, Id. Ch. 108; Collins v. Collins, 2 Paige Ch. 10; McGee v. McGee, 10 Ga. 489; Story v. Story, Walk. Ch. 442; Chaires v. Chaires, 10 Fla. 317.

The court may grant alimony after final decree. Shotwell v. Shotwell, 1 S. &. M. Ch. 51; Richardson

v. Nelson, 8 Yerg. 67; Miller v. Miller, 6 John. Ch. 51; Forrest v. Forrest, 25 N. Y. 505; Kinnier v. Kinnier, 45 N, Y. 535; Burgess v. Burgess, 1 Duv. 287.

Attorney and counsel fees are allowed as a matter of course. Wright v. Wright, 1 Edw. Ch. 62; Hammond v. Hammond, Clark, 155; Longfellow v. Longfellow, Id. 344, marg.; Monroy v. Monroy, 1 Edw. Ch. 382; Smith v. Smith, Id. 255; Story v. Story, Walk. Ch. 421; Goldsmith v. Goldsmith, 6 Mich. 286; Amos v. Amos, 3 Green Ch. (N. J.) 172; Patterson v. Patterson, 1 Halst. Ch. 390.

It is not necessary that the complainant should show an absolute right to a divorce before being allowed alimony and suit money. Mix v. Mix, 1 John Ch. 365; D'Aguilar v. D'Aguilar, 3 Eng. Ec. 338; Collins v. Collins, 2 Paige.

LONG, C. J.—John B. Lamy and Mercedes Chaves de Lamy, plaintiffs in error in this court, filed in the district court of Santa Fe county their bill of complaint to review and set aside a decree rendered in said court on the first day of August, 1885, in a cause wherein Mercedes Chaves de Lamy was complainant, seeking a divorce, and John B. Lamy was defendant. Upon hearing the bill filed below by the plaintiffs in error here, who were complainants in the bill of review, the court dismissed the same. The plaintiffs in error contend that the court below should have sustained the bill of review, and bring this cause here to correct the error which it is alleged the court below committed in dismissing the bill of review.

It will be necessary to a proper understanding of the objections urged to state with some detail the various steps taken in the original proceeding for divorce of Mercedes Chaves de Lamy v. John B. Lamy. The bill of complaint in that case was filed in the district court, and in December, 1879, an amended bill was filed, Thomas B. Catron appearing therein, by appoint-

ment of the court, as next friend. It was charged in
the bill of complaint, among other things, that at the
time of the marriage of the complainant Mercedes
Chaves de Lamy with John B. Lamy she was possessed
of the sum of $16,800 in money and property, which
she inherited from her father, and that after her mar-
riage she inherited and received from her mother the
sum of $27,000 in money and property, including a
large amount of valuable real estate in Santa Fe. She
further averred that, against her will, and over her
remonstrance and objection, the defendant in said
action, her husband, had reduced to his possession,
and taken and converted, the whole of the said prop-
erty, and the rents, profits, and issues of said real
estate; that he had changed the form of much of the
property, and was then claiming the whole of it abso-
lutely as his own, and denying that she had any inter-
est in the same; that he refused to give her pos-
session or control of the whole or any part of the prop-
erty, and had so managed the same as to materially
lessen it in value; that at the time of his marriage,
and at the time of bringing the action, he had no prop-
erty of his own whatever, and that he had incumbered
by liens a part of her property. For relief she asked to
be decreed an absolute divorce; that the property be
decreed free from said liens; that she be decreed to be
the owner of the whole of the property; and that the
same be restored to her. She also prayed that John
B. Lamy should be required by decree to pay into court
a sufficient sum of money to pay her solicitors, Messrs.
Catron & Thornton, for their services, as such, in insti-
tuting and conducting the divorce suit and to pay costs.
John B. Lamy appeared to the action, and on the
twentieth day of April, by his solicitors, Messrs. R. H.
Tompkins and C. H. Gildersleeve, filed answer, to
which a replication was filed by complainants, and
thus issue was joined. July 26, 1880, the cause was

referred by the court to a master, with directions to take evidence and report. February 9, 1882, the master filed his report, showing therein that neither party had presented any witnesses for examination, and that he had not taken any evidence. Two days before this report by the master, John B. Lamy, then appearing by C. H. Gildersleeve, his solicitor, moved to dismiss the action for want of prosecution. It may be observed that at this state of the record the cause was pending in court on the bill, answer, and replication, with the motion of John B. Lamy to dismiss not yet acted upon, with Catron and Thornton yet appearing for the complainant, and C. H. Gildersleeve for the defendant. On the twenty-first day of February, 1882, the record recites: Catron & Thornton, solicitors for said complainant, filed their petition of interpleader. In it they allege their employment by Mrs. Lamy as her solicitors; they show the services rendered for her; charged that she agreed to pay them the sum of $5,000 out of her separate property, at the time in the control of her husband, in trust for her benefit; that such property was worth $40,000; that Mrs. Lamy and her husband settled their controversy, and that it was agreed that her husband should hold her property as her trustee on such settlement, and pay out of the same the said $5,000; that the services were of that value to her, and not paid. They ask that the cause be continued on the docket, a master be appointed to take proofs, and that their fees be decreed in the action. No further action was taken for nearly five months, when, on July 10, the court ruled Mercedes Chaves de Lamy and John B. Lamy "to plead, answer, or demur to the petition of interpleader of said Catron and Thornton, on file herein, at or before the incoming of court on next Monday morning." For designation only, as a matter of brevity in statement, the paper filed by Catron & Thornton, will hereafter, in this

opinion, be referred to as an interpleader, following in that respect, for designation, the name given by the court below to that paper. Two days after this rule was entered of record, July 12, Catron & Thornton served C. H. Gildersleeve, as solicitor for defendant, with a copy of the interpleader. July 26, neither John B. Lamy nor his wife appearing to the interpleader, and failing to respond to the rule "to plead, answer, or demur" thereto, it was decreed that the same be taken as confessed. On the thirty-first day of July, for the first time after the filing of the interpleader, John B. Lamy appeared, and then, by C. H. Gildersleeve, his solicitor, moved to set aside the decree pro confesso, the order of reference to a master made thereon, and to strike from the files the interpleader. Thus the cause remained, without any action whatever, either by the court or parties, until the twentieth day of July, 1884, a period of over two years. The interpleader was filed during a term of court, and presumably in open court; yet John B. Lamy, with full opportunity to examine the record and files, permitted one hundred and forty days—nearly five months —to elapse without taking a single step to defend against the claim for solicitor's fees. He permitted nineteen days to pass after the actual delivery of a copy of the interpleader to his solicitor, and court in session, before he took any step with respect to the interpleader. He did not then make to the court any complaint that he was not aware that the interpleader had been filed, or that he was ignorant of the fact that a rule to plead had been entered against him, or for want of service of a copy of the interpleader in time. The record does not disclose that any objection on the ground of irregularities of that character was made. Had objection on that ground been made at that time in the court below, the ruling there might have been different; but, as no such objection was presented for the consideration of

the court below, it can not be considered for the first time here, but must be held to be waived.

The ground of the motion to set aside the decree pro confesso, filed by John B. Lamy, is because "the court has no jurisdiction to entertain the consideration of the matters contained in said interpleader, nor grant any decree, order, or relief on the matters and facts therein stated and contained." He did not object on the ground of irregularity, but attacked the power and jurisdiction of the court, as an incident to and a part of the cause, to ascertain and decree solicitors' fees for services rendered the wife in a divorce proceeding. The discussion of this point will appear more appropriately later on in this opinion. Two years passed after the motion by John B. Lamy to set aside the decree pro confesso was made, when, on the twenty-eighth day of July, 1884, the complainant in the divorce action filed in court her own affidavit as follows:

"Affidavit of Complainant. Mercedes Chaves de Lamy v. John B. Lamy, Chancery. In the district court, Santa Fe county, territory of New Mexico. Mercedes Chaves de Lamy, being duly sworn, on her oath states that she is the complainant in the above entitled cause, and at present residing in the city of Santa Fe, territory of New Mexico. That all matters of difference existing between herself and defendant, her husband, at the time of filing said bill of complaint, have been for the past three years fully settled and adjusted. That a reconciliation between herself and her husband has taken place, and she is now living with him again. That over two years ago she directed her attorneys in the above cause to dismiss said bill of complaint, and is greatly surprised to learn that her directions in the premises have been disregarded by them. Affiant states that she employed T. B. Catron as one of her counsel at the time said suit was brought, but made no arrangements with him then nor since

whereby she was to pay or promised him any compensation for services rendered, or to be rendered, or that he was to receive from her any greater compensation than her other counsel, which was five hundred dollars, which she paid each to Wm. Breeden and T. F. Conway. That she desired Mr. Catron, at the time she retained him, to name the amount of his fee, but that he assured her that it was unnecessary, as his charges would be very reasonable. That in fact Mr. Catron performed for her but very little service, Mr. Conway being the attorney who did most of her business, and with whom she most always consulted. Affiant further states that it is her desire said suit be dismissed, and she respectfully requests the court to so order.

"MERCEDES CHAVES DE LAMY.

"Subscribed and sworn to by the said Mercedes Chaves de Lamy this 4th day of February, 1884, before me, GEORGE CUYLER PRESTON, Notary Public, Santa Fe County, N. M."

On the same date, John B. Lamy filed a denial under oath that he had ever promised, obligated himself, or undertaken to pay the solicitors' fees of Catron & Thornton. There was pending at that date in the court below the motion of John B. Lamy, before mentioned, and the application of Mrs. Lamy to dismiss her action for divorce. The motion of John B. Lamy was denied, and C. M. Phillips appointed master to take testimony as to the allowance of solicitors' fees, and to report to the court.

The face of the affidavit and application to dismiss filed by Mrs. Lamy proves that she had personal knowledge as early as February 4, 1884, of the pendency of the interpleader, and of the claim by Catron & Thornton to have, in the divorce proceeding, a decree for their solicitors' fees. This was six months before the court ruled upon the motion of her husband. During this time they had become reconciled. She never asked

the court to set aside the decree pro confesso as to her, or for any relief whatever, except to dismiss the action. There is absolutely not a line of the record to indicate that she objected to the action of the court in proceeding to ascertain and fix solicitors' fees, except what may appear in her application to dismiss the case. In that application there is no intimation that she denies the power of the court to decree solicitors' fees against her. She objects to the amount, concedes that she agreed to pay $500 to Catron, and is silent as to the action of the court taken before that time. The prayer of her bill of complaint is "that the defendant [John B. Lamy] be required to pay into court a sufficient sum of money to pay the solicitors of your oratrix for their services in instituting and conducting the suit." While she does not designate the fund or estate out of which her husband is to pay into court such fees, she does show in her bill that the only property John B. Lamy held belonged to her, and the order of court could only be effective in the first instance by payment out of her property. That she expected at the commencement of the cause to charge that property with solicitors' fees is apparent from the averments of the bill. Mrs. Lamy was in court as a complainant, praying the allowance of solicitors' fees. She was in court with her sworn affidavit, asking to dismiss the bill, and also in court with her sworn affidavit with allegations relating to solicitors' fees. The record is silent as to whether she filed this application in person or by solicitor. It is immaterial which way she did that act. In three days after she filed her application to dismiss the cause, Mr. Gildersleeve appeared as her solicitor before the master. He was, from July 31, 1882, forward, also the solicitor for her husband. At the time she filed the application to dismiss, and for six months prior thereto, she was living with him. It is impossible to resist the conclusion from the record that Mr. Gilder-

sleeve, or some other solicitor adverse to Catron &
Thornton, represented her in court in the application
to dismiss. While the motion of John B. Lamy to set
aside the decree was denied, no action is disclosed by the
record on his wife's application to dismiss the cause.
The matter of solicitors' fees was referred to the master,
and, although denying the motion to set aside the
decree pro confesso, the court seems to have accorded
both to Mr. and Mrs. Lamy as full right and opportu-
nity to make defense as if the motion had been sus-
tained. On the thirty-first day of July the evidence of
T. B. Catron was taken before the master, and the rec-
ord recites: "Present, C. H. Gildersleeve, attorney for
complainant." On behalf of Mrs. Lamy, Mr. Gilder-
sleeve, as her solicitor, cross-examined Mr. Catron. Six
months more intervened, and neither party moved in
the action. Then, January 18, 1885, Louis Sulzbacher
was examined as a witness, and again the record re-
cites: "Present, Charles H. Gildersleeve, solicitor for
complainant." Mr. Barnes at the same time testified
as a witness, and the solicitor of Mrs. Lamy cross-ex-
amined both witnesses. Again, on the twenty-fourth
of January, Mrs. Lamy, by her solicitor, Mr. Gilder-
sleeve, again appeared before the master during the
taking of evidence, and examined the witness. Febru-
ary 28, 1885, she appeared before the master, and was
herself sworn, and testified in her own behalf as a wit-
ness, and introduced other evidence for herself, all on
the question of solicitors' fees, Mr. Gildersleeve appear-
ing at the time as her solicitor. It was nearly seven
months from the date of the reference to the master till
the conclusion of the evidence. During this time she
was represented by an able solicitor. She had the ben-
efit of her husband's aid and advice, and the most
ample opportunity to disclose to the court every fact in
existence relating to solicitors' fees, or likely to reduce
the amount of allowance. No evidence was offered and

refused; no witness presented who was not examined. What better opportunity could have been given her, if the court had set aside the decree, and permitted a formal appearance? In her affidavit she swears Mr. Catron should have received $500. In good conscience, she could not expect, if the court had jurisdiction to decree at all, that it would fix the amount at less than that sum. The question of the value of the services is not before this court.

It is also apparent from the face of the record that both Mr. and Mrs. Lamy had ample opportunity given them, by the court, to prove before the master every fact within their power relating to the fees claimed. Neither can complain if such opportunity was neglected. What prevented either party from examining other witnesses? Nothing. The examination was not hastened. The door was not closed against investigation. If full opportunity was offered to make defense, and such opportunity was neglected or refused, such neglect or refusal should estop the party from complaining. This case is not one where the party complaining shows that he was denied the right to defend. Suppose the record does show some irregularity in the mode of procedure, is it such as to invade any substantial right of plaintiffs in error? If the court had refused to allow them altogether to be heard on the question of solicitors' fees, the case would be different. The record discloses that they were allowed to be, and in fact were, heard, and did produce evidence,—all they desired. Under such circumstances, even if it should appear that such hearing was by reason of the interpleader, rather than under the averments of the bill, how could that affect substantial rights? It is to be remembered this is one of the errors complained of. The interpleader, as it is called, only gave Mr. and Mrs. Lamy fuller notice of the exact character of the claim for solicitors' fees, and thus the better enabled them to meet the claim by evi-

dence. If the court, as an incident to the divorce proceeding then pending, had jurisdiction and power to refer to the master the matter of solicitors' fees that evidence might be taken to inform the court as to value, what possible difference could it make to Mr. and Mrs. Lamy whether the reference recited that it was upon the interpleader or bill or issues, so long as they were allowed to be heard? The thing to be considered and reported upon by the master was the claim for solicitors' fees. It was that claim upon which he was to take proof. The form of the order which gave the master this power was a mere incident,—a matter of form. To reverse the case on that ground alone would be to sacrifice substantial rights to immaterial form. In this reference, if there was any error at all, it was of form and not of substance, and in no way deprived the plaintiff in error of any substantial right. "Error in matter of form only, although apparent on the face of a decree, seems not to have been considered as a sufficient ground for reversing the decree." Story, Eq. Pl., sec. 411; Barb. Ch. Pr. 92. In the case before this court the plaintiffs in error had their day in court, their opportunity to present and examine witnesses, to be heard on the allowance and amount of solicitors' fees, as fully as if the court had set aside the decree pro confesso entered as to the interpleader. The irregularity is one that is harmless. "A judgment will not be reversed for an error which does not affect the substantial rights of the party complaining." Morse v. Morse, 25 Ind. 156; Louden v. Dickerson, 19 Ind. 387; Bowen v. Pollard, 71 Ind. 177. In Holcraft v. King, 25 Ind. 352, the court say: "Where a correct result is reached in the court below, error in the mode of reaching it is harmless." The authorities to this effect are numerous.

Other questions are pressed upon the attention of the court by the plaintiffs in error. They insist that

the court had no right to permit the interpleader to be filed. This objection is substantially the same as that relating to reference. If the court had full power to make the reference without the interpleader, or if the interpleader was treated, or can be properly regarded, in its legal effect, as a motion in the cause, as it well may be, to refer the claim of the solicitors to a master to take proofs, its allowance by the court was harmless. There are three propositions made by the plaintiffs in error, which may be considered together:

DIVORCE: alimony pendente lite: separate estate of wife: attorney's fees: jurisdiction of district court.

"First. That the husband is not liable at common law to the legal adviser of his wife, in prosecuting or defending a divorce suit. Second. That the wife is not liable on her contracts for counsel fees, made during coverture, even though she joins the suit." If these two propositions are correct, and followed by a third: "That the wife's separate property can not be charged by her, or by a court of equity, for the fees of her solicitor in prosecuting a just cause for divorce,"—then, indeed, is a married woman in this territory at the mercy of her husband, as all means whereby she may protect herself from unjust accusation in court is cut off. We can not hold with plaintiffs in error on the first proposition. It is held in many cases, where the wife has no means to prosecute her action, that the husband is liable for her necessary solicitors' fees, and that they may be recovered either in an action at law or allowed and enforced in the divorce proceeding. Preston v. Johnson, 21 N. W. Rep. 606; Porter v. Briggs, 38 Iowa, 166. Other cases to the same effect are more fully set out later in this opinion. The plaintiffs in error further say: "Before counsel fees can be made a charge upon the separate estate of the wife, it must appear that the service rendered was for the benefit of the estate." The plaintiffs, here, imperfectly, at least, admit that in a case where the court finds that the solicitors' fees are for the

benefit of the wife's separate property, they may be
charged against it.    This court elsewhere construes the
decree complained of to be a charge against the sepa-
rate estate of the wife, and against the husband only
for so much as can not be thus made; so, if the court
found, as a matter of fact, the services to be beneficial
to her estate, it had the legal right to decree the value
thereof to be paid out of the same.   Assuming, for the
present, a point hereafter considered, that the court
had jurisdiction, it certainly might lawfully consider
the evidence to determine whether such services were
or were not beneficial to the wife's separate estate.  The
court below had the right to draw such conclusion of
fact from the evidence as was, in its judgment, proper,
and such conclusion could not be reviewed in this pro-
ceeding.   "A bill of review   *   *   *   can not be sus-
tained upon the ground that the court has decided
wrong upon a question of fact.    Nor can it be brought
for wrong inferences of the court on matters of evi-
dence, nor upon the ground that the former decree was
not supported by evidence."   Barb. Ch. Pr. 91; Webb
v. Pell, 3 Paige, 368.   In the latter case it is said by
the court: "It is well settled that a bill of review for
error apparent on the decree must be for an error in
point of law, arising out of facts admitted by the plead-
ings, or recited in the decree itself, as settled, declared,
or allowed by the court."   As pertinent to this rule,
where, it may be asked, is it settled in the record that
the property charged in the bill of complaint to be the
separate property of Mrs. Lamy was not so?   If it was
her separate estate, and the service rendered for her by
the solicitors was beneficial thereto, then, according to
the admission of the plaintiffs in error, the fees might
have been charged against such estate by the court, if
it had jurisdiction.   Such we believe to be the law.
Whether that property was her separate estate, or was
her husband's, is not a question of law, but of fact.

Whether the solicitors' services were beneficial to the estate, or were not so, was also a question of fact. Both these questions the court had a right to pass upon, without being subject to review upon a bill for that purpose.

If the court below, upon the original hearing, found that the property in the hands of John B. Lamy was the separate estate of his wife, Mrs. Lamy, and also found that the services rendered were beneficial to her estate, it would have the right, upon that state of the evidence, to charge the services in a proper proceeding against her estate. The following authorities are to that effect. Owen v. Cawley, 36 N. Y. 604; Yale v. Dederer, 18 N. Y. 276, 22 N. Y. 451; Viser v. Bertrand, 14 Ark. 267; Cook v. Walton, 38 Ind. 228; Putnam v. Tennyson, 50 Ind. 456. This court can not presume that the court below did not determine those to be facts. It is nowhere in the record shown, declared, or admitted that the court found to the contrary. In the absence of anything to the contrary, this court will presume the court below found all the facts proven or established necessary to constitute a foundation for the decree. Did the court decree the solicitors' fees to be a charge upon the wife's separate estate? The decree allows Catron & Thornton $4,000 as solicitors' fees. There is no question before this court as to the amount of the decree. It orders that the defendant, John B. Lamy, pay over that sum, and recites as follows: "Said respondent [John B. Lamy] is hereby allowed to charge to and against the said property of said complainant, which he may have recieved into his power, possession, or control, as well as against any acquest property he may have received of said marriage community, and that execution do issue for the same, to be levied of the goods, chattels, property, effects, and real estate of said complainant, and of the acquest property which may be found in

the hands, possession or control of the respondent."
The sum is here charged directly against the wife's
property in the hands of the husband.   Its seizure and
sale is provided for to make the debt.   To reach this
result, the court, no doubt, upon the pleadings and
proofs, determined the fact to be that the wife em-
ployed and agreed to compensate her solicitors; that
under such promise they performed services for her in
the divorce proceeding, worth $4,000; that she had a
separate estate of her own, in the hands of her hus-
band; that he held the estate as her trustee, and that
the services were beneficial to the estate.   The court
had the legal right to so find, if, in its judgment, that
was the proper conclusion of fact to draw.   If it did so
find, then it had the right to predicate the decree made
on such conclusion of facts.   The ruling of the court
on the facts can not be attacked by bill of review.
This court can not hold that it is error of law, if the
court below found the facts contrary to the right of
the case or contrary to the evidence.   In addition to
the averments of the bill, there is much evidence
indicating that she intended originally to charge
her separate estate with solicitors' fees, and that
she promised to do so.   This court has nothing to
do with the matter of fact, whether the services were
or were not beneficial to the estate, or whether the
amount allowed was less or greater than the proper
amount which should have been allowed.   These ques-
tions are not before the court.

Plaintiffs in error contend that it is too late to
apply for solicitors' fees after the parties have settled
their differences, and returned to the con-
nubial state.   Authority is cited in support
of that proposition.   If the solicitor per-
forms services in a divorce cause for a
wife, so as to create a present right of allowance,
which a court of equity is bound to respect, and decree

COMPROMISE of
divorce suit:
liability for
attorneys' fees
not affected
thereby.

during the litigation, while the parties are carrying on their controversy, it is difficult to perceive how the compromise of the husband and wife, to which the solicitor is not a party, can take away such established right. The case of Sprayberry v. Merk, 30 Ga. 81, declares the correct doctrine on that point, and also is to the effect that the wife may charge the common estate of both in her husband's hands for the fees of her solicitors. In that case Sprayberry had performed services as solicitor for the wife in prosecuting an action for divorce against her husband. The husband and wife compromised their suit, and began again to live together. It seems the husband held common property of both in his hands, and the court holds that such property may be charged with her solicitor's fees. The court there say: "As to this one matter of a suit for divorce the wife is sui juris, having a clear right to institute and conduct that kind of a suit independently of her husband's consent. But this right is practically denied to her, if she can command no means of paying the agents who are necessary to the conduct of the suit; therefore, it is that, quoad hoc, she may charge the common funds of herself and husband in his hands. But this power on her part is founded on the necessity of the case, so its extent does not exceed the demands of the necessity; and, therefore, she can charge the common funds, or her husband, which is the same thing in effect, only with the real value of such services as she may procure. * * * It is worthy of remark that her counsel fees are allowed as a part of her necessary maintenance, and are allowed before it is ascertained whether she has valid ground for divorce or not. They are allowed as a necessary means of testing that question,—a question which every wife has a right to test whenever she pleases." The court continue: "As to the settlement which took place in this case between the husband and wife after

she had got the services of her counsel, it is scarcely necessary to remark that the counsel, after having acquired a right to compensation for his services by rendering them, at the request of the wife, could not be settled out of that right by arrangement to which he was no party." That case is somewhat analogous to the one here, and the principle a wholesome one. The authority is directly in point as to the proposition that attorneys' fees may be allowed after the parties to the divorce suit have become reconciled, and resumed their marital relations. If the husband and wife could not so settle their case as to deprive the solicitor of his right to recover in an action at law his fees, then such settlement could not deprive him of his right to have the same ascertained and decreed in the divorce proceeding while it was pending, even though the husband and wife had resumed their relations: provided such allowance could properly be made in such case as an incident thereto. In the case of Weaver v. Weaver, 33 Ga. 173, the facts are as follows: Virginia Weaver instituted a divorce suit against her husband. During the pendency of the action, upon her motion, and upon a showing, the court ordered that defendant pay into court a certain sum of money to compensate the solicitor of the wife for bringing and prosecuting the action. Subsequently, and before this money had been paid in, but after the solicitor had performed some service, Mrs. Weaver discontinued the suit. A motion was made in the case to rescind the order for the payment in of counsel fees. The court below declined to rescind the order, and the case was taken to the supreme court on that point, among others. The supreme court affirms the action on that point of the court below, and says: "Shall counsel be driven to his action at law to recover his fees, or shall the order already passed by the court for that purpose be enforced? We see no reason for compelling counsel to

resort to an independent action, when his fees have
been already adjudged by the proper court.''

It will be observed that the supreme court of
Georgia in this case not only hold that the court
wherein the divorce action is pending is the proper
court, but also that such a case is one in which it is
proper to adjudge counsel fees, and enforce their pay-
ment, and also that the compromise between the
husband and wife does not operate to divest the attor-
ney of his right to compensation.    In Burgess v.
Burgess, 1 Duv. 288, the supreme court holds:
''Although the unfortunate difficulties which existed
between the husband and wife, and which had resulted
in a divorce suit, had been happily terminated by a
reconciliation, after the suit had been prepared for
trial, yet it was right to make a proper allowance
against the husband   *   *   *   to pay the attorneys
who conducted the suit for the wife.''   This case is
under a statute which somewhat weakens the same as
authority here.    A very interesting discussion, highly
illustrative of the question here, may be found in North
v. North, 1 Barb. Ch. 243.    The case was decided as
early as 1845, and seems to have been considered and
decided by the court independently of statutory pro-
vision.    Chancellor WALWORTH there says: ''By refer-
ring to the reviser's note,   *   *   *   it will be seen
that the allowance does not depend wholly upon the
statute, but upon the practice of the court, as it pre-
viously existed.''   The chancellor observes:  ''The
counsel for the complainant is under a mistake in sup-
posing that the allowance for ad interim alimony, and
for the expenses of defending the suit, is confined to
cases in which both parties admit the original marriage
to have been legal.''    The question there seems to
have been as to the legality of the marriage.    Counsel
appear there to have admitted, where the marriage was
legal, and the divorce was sought for acts occurring

subsequently, that counsel fees could be allowed in the divorce action, but contended that such a rule did not apply where the legality of the marriage was denied. In discussing the question thus raised, the learned chancellor establishes that it was the practice to allow solicitors' fees, when asked, in divorce cases generally, both where the marriage was admitted, and in cases where that fact was controverted; and this, independently of statutory enactments. So the case becomes especially pertinent to the contention before this court. After a citation from Ayliffe and Poynter, and other authorities, the opinion continues: "The precise question now under consideration came before Sir GEORGE LEE, in the arches court of Canterbury as early as 1753, in the case of Bird v. Bird, 1 Lee, Ecc. 209, and was decided in favor of the wife. In that case the husband brought a suit against the wife to annul the marriage, on the ground that she had another husband living at the time of her marriage with the plaintiff. The fact being denied by the wife, she applied for an allowance to enable her to defend the suit. It was granted to her accordingly, although the plaintiff insisted she was not his lawful wife, and that he was not bound to bear the expenses of her defense."

The cases thus cited, and they could be multiplied, certainly must dispose of the contention made by John B. Lamy on his construction of the legal effect of the decree as against him. By the terms of the decree, he can only be reached after the separate property of his wife is exhausted, and the authorities quoted establish beyond doubt the power of the court to charge him in that event, at least. There is one more case on this point so clear and strong in its reasoning, so directly in point, and satisfactory, that we can not omit to cite it. Preliminary to a consideration of that cause, it may be observed that in New Mexico jurisdiction to decree a divorce is conferred by statute. Sections 998, 2282,

Comp. Laws.　No provision is made by statute, either
for alimony or for an allowance to the wife to prose-
cute a cause for divorce against her husband, or for,
allowance to enable her to defend against such an
action when prosecuted by him.　Unless there is power
outside of the statute to charge the husband in such
cases with solicitors' fees for the wife, and for neces-
sary expenses connected with such suits, in cases where
she has no separate property of her own, then the wife
is powerless to protect herself, and is at her husband's
mercy.

This court should consider carefully before main-
taining a rule of law having such effect.　If the wife,
having a separate estate of her own, may charge it, or
the court may do so, with legitimate, necessary, and
proper expenses for solicitors' fees to enable her to pro-
tect herself in such cases, and in cases where she has
no property, if the court may allow against the hus-
band, and compel him to pay, such necessary expenses,
then the wife is clothed with a proper power for her
own defense.　The supreme court of Georgia, as long
ago as 1851, was confronted with conditions exactly
similar, and in McGee v. McGee, 10 Ga. 478, delivered
an opinion which, to this court, appears both exhaus-
tive and conclusive.　It is unanswerable, and sustains
the right of the wife to temporary alimony in a proper
case, and allowance for her necessary expense, when
she has no estate, out of the property. of the husband.
The statute of Georgia at that time provided that, in
all cases where the court determined in favor of a
divorce to the wife, it could make provision out of the
property of the husband for alimony.　But the statute
of Georgia, like our own, was silent as to temporary
alimony or expenses preceding such determination.
The court in that cause stated the proposition to be
considered in this way:　"The first proposition denies
altogether the right of a wife, pending a libel for

divorce, to a temporary allowance out of the estate of the husband for her support and maintenance, and to defray the expenses of the litigation; the counsel insisting that, according to the laws in force in this state, no power is conferred upon the courts, either of law or chancery, to grant any alimony until after a divorce is decreed. * * * The power which he (the judge below) exercised * * * is that of allowing the wife temporary alimony. It is conceded to the plaintiff in error that this power is not expressly conferred by statute, whilst it is also to be claimed against him that it is not prohibited." Such is also the state of the law to-day in New Mexico. The court proceeds: "We look out of the statute book for its source; that is, out of the express provisions of the statute. First, then, I say it is incidental to the power to grant divorces. The superior court being clothed with jurisdiction over divorces, from that jurisdiction springs the authority, pending the cause, to provide, by summary order, for the maintenance of the wife. It is thus that the ecclesiastical courts in England acquired the power to grant alimony. That power is not an original jurisdiction; it is derivative and incidental. Indeed, it may be stated as a true general proposition that no court has an original authority to decree a separate maintenance while the marriage contract subsists; and, when such power is exercised, it is incidental to some other conceded power. Thus, a court of chancery, as an original power can not decree a separate maintenance for the wife; but, having jurisdiction over agreements, when there is a separation, and an agreement for a separate maintenance, it will specifically enforce that agreement. * * * In this way, I apprehend, originated the power in the ecclesiastical courts to provide alimony. Having jurisdiction over divorces, as incidental to that they acquire the power, where the divorce was decreed, to provide permanently for the wife, and the lesser power

of providing temporarily for her whilst the litigation is pending. Both powers they have immemorially exercised. In Ball v. Montgomery, 2 Ves. Jr. 195, the lord chancellor said: "I take it to be now established law that no court, not even the ecclesiastical court, has any original jurisdiction to give the wife separate maintenance. It is always incidental to some other matter.' * * * I see no reason why the superior courts of this state have not acquired jurisdiction over temporary alimony incidentally, as the ecclesiastical courts acquired jurisdiction over alimony, both temporary and permanent. It is founded in the most manifest justice and sternest necessity. * * * It is not, therefore, unreasonable to say that the legislature, in clothing a tribunal with power to decree a divorce, intended thereby, as necessarily incident to it, to invest the same tribunal with power to make provision for the wife. This justice and necessity is equally as stern, and the inference therefore equally as clear, in regard to temporary as permanent alimony. * * * Alimony pedente lite is a common law right. It was an established right in England when we adopted the common law. It is no less a common law right because it grew up under the usages of the ecclesiastical courts. What becomes of that right in Georgia? The common law which guaranties it has not been repealed. It is suited to our condition, and in harmony with our institutions." This court has now quoted extensively from McGee v. McGee, because the conditions in Georgia at the time when that opinion was delivered were exactly the same on the question involved with that of New Mexico when the decree sought in this case to be reviewed was entered, and for the further reason that the historical statement of that opinion is correct, and the conclusions deduced therefrom indisputable and convincing. This court is unwilling to hold that in New Mexico the courts in divorce proceedings are powerless

to place the wife, as to means for her defense and protection, on an equality with her husband. In McGee v. McGee it is further said (page 487 of the opinion): "In a recent case in Pennsylvania, under statutes conferring jurisdiction over divorces very much indeed like ours, but conferring no power to make an allowance to the wife for the expenses of her suit, a motion was made for an order upon the husband for the expenses. The court allowed it, upon the ground that 'it was an incidental authority to the power given to the court to decree divorces.' See Melizet v. Melizet, 1 Pars. Eq. Cas. 78. The expenses of the suit and the expenses of maintenance stand upon the same ground. The expenses allowed were not the court costs simply. See, also, the following cases: Yeo v. Yeo, 2 Dick. 498; Wilson v. Wilson, 2 Hagg. Const. Rep. 203; D'Aguilar v. D'Aguilar, 1 Hagg. Ecc. 773; Soilleux v. Soilleux, 1 Hagg. Const. Rep. 378; Poynt. Mar. & Div. 263; Monroy v. Monroy, 1 Edw. Ch. 382; Wright v. Wright, Id. 62; Denton v. Denton, 1 Johns. Ch. 365; Mix v. Mix, Id. 110; Wood v. Wood, 8 Wend. 364; Wood v. Wood, 2 Paige, 115; Lawrence v. Lawrence, 3 Paige, 267; Germond v. Germond, 4 Paige, 543."

The reason and authority cited is to the mind of this court satisfactory and conclusive as to the jurisdiction and power of the court below to render the decree sought to be reviewed and set aside. It may be well, also, to refer to a more recent case, decided by the supreme court of Iowa (Porter v. Briggs, 38 Iowa, 170). In that case the husband brought an action of divorce against the wife, charging her with adultery. Porter & Moir, at her request, rendered legal services as her attorneys in defending her in the action against such charges. The husband contended that he was not liable, and that if he was his liability should have been found and decreed in the action for divorce. The

court say: "The ecclesiastical courts in England and the courts of chancery of this country have almost uniformly in a divorce proceeding required the husband to pay the wife's counsel.  *  *  *  This right is usually enforced in the courts which take cognizance of the divorce proceeding. It is eminently proper that that court should have jurisdiction of all the incidents of the divorce, and be able to grant complete relief, thus avoiding further litigation. Oftentimes that court can grant more complete relief than a court of law; as by suspending the action of the husband until he advances or secures the sum ordered." The court then further considers the claim being urged before it that an action at law would not lie to recover for such services, and adds: "It is claimed that to sustain this jurisdiction will give rise to a multiplicity of suits, which it is the policy of the law to avoid. We concede this would be a good ground for asking a court of chancery, having once assumed jurisdiction of the case, to determine the entire matter, with all its incidents, and not turn the parties over to an action at law. But it is not, as we conceive, a reason for denying the jurisdiction of a law court, when that of a court of equity has not been invoked." In the case before us the jurisdiction of the equity court was invoked and exercised, and it is the exercise of such jurisdiction that is complained of. We hold that the district court on the trial of the original cause had jurisdiction and power, as an incident to the power to decree divorces, to grant to the wife, pedente lite, upon a proper showing, temporary maintenance and allowance for solicitors' fees, and to enforce payment of the same against the husband, or his property, in the absence of a sufficient separate estate belonging to the wife, or, under such circumstances, to charge such maintenance and allowance for solicitors' fees against any common property belonging to both husband and wife, whether such property was

in the control of the husband or wife. We further hold that, where the wife has an ample estate of her own, she may charge such estate with necessary solicitors' fees to enable her either to prosecute or defend a divorce action to which she is a party; and where she has done so, in the employment of her solicitor, that the court has power in the divorce proceeding, as an incident thereto, to decree such necessary fees against her separate estate as an allowance to the solicitor, so far as such fees are actually necessary, and being limited to the fair value of the service rendered. It follows that the court below in the original action did not exceed its jurisdiction, and committed in that respect no error. Inasmuch as the court had power and jurisdiction in the original case to enter the decree complained of, the irregularities of practice shown in the record are harmless, and do not constitute reversible error, and, therefore, the decree of the court below is approved, and the cause affirmed.

WHITEMAN, McFIE, and LEE, JJ., concur.